1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9           SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| WILLIAM CARR, | Case No.: 19-cv-1139 JLS (MDD) |
| Plaintiff, | **ORDER (1) GRANTING PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF DEFENDANTS' POLICE PROCEDURES EXPERT AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION** |
| v. | |
| COUNTY OF SAN DIEGO; JEFFREY CHU; JOSEPH MCMANUS; CHRISTOPHER CADIGAN; JASON FERGUSON; ALEXANDER SOLIMAN; and DOES 1–10, inclusive, | |
| Defendants. | |
| | (ECF Nos. 58, 60) |

Presently before the Court is Defendants County of San Diego, Jeffrey Chu, Joseph McManus, Christopher Cadigan, Jason Ferguson, and Alexander Soliman's (collectively, "Defendants") Motion for Summary Judgment or in the Alternative Summary Adjudication ("Mot.," ECF No. 58) and Lodgment of Exhibits ("Defs.' Lodgment," ECF No. 58-6), as well as Plaintiff William Carr's opposition thereto ("Opp'n," ECF No. 60) and Lodgment of Exhibits ("Pl.'s Lodgment," ECF No. 61), Defendant's reply in support of its Motion ("Reply," ECF No. 64), and Defendants' Errata Regarding Exhibits ("Errata," ECF No.

65).  Plaintiff's Opposition also contains a motion to strike the declaration of Lieutenant Criss Cross ("MTS").  The Court heard oral argument on July 8, 2021.  (*See* ECF No. 71.)  Having carefully considered the Parties' arguments, the law, and the evidence, the Court **GRANTS** Plaintiff's Motion to Strike and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment as follows.

BACKGROUND

**I.    Factual Background**[1]

Plaintiff is an insulin-dependent Type 1 diabetic who wears an insulin pump.  Declaration of William Carr ("Carr Decl.," ECF No. 60-1) ¶ 4.  On July 15, 2018, at about 5:40 p.m., Plaintiff entered the East Village Asian Diner (the "Restaurant").  Defs.' Lodgment Ex. 22 ("1st Restaurant Video").  Plaintiff sat down at the bar and told one of the Restaurant staff that he needed sugar or food.  Pl.'s Lodgment Ex. 6 ("Pl.'s Carr Depo.") 44:02–06; Carr Decl. ¶¶ 6–7.  Margie Sierra, the server, handed Plaintiff a menu.  Pl.'s Carr Depo. 44:02–06.  Carr tried to look the menu over, but he was too disoriented and confused to read it and kept falling asleep.  *Id.* 44:11–21; Carr Decl. ¶ 7; Errata Ex. 2 ("Defs.' Sierra Depo.") 15:6–24.  Plaintiff does not have continuous recall of what happened while he was at the restaurant; rather, his memory is "flashy."  Carr Decl. ¶ 8; Pl.'s Carr Depo. 44:14–17.

At 6:18 p.m., Ms. Sierra called 911 and reported that a man—Plaintiff—would not leave despite having been asked to leave multiple times.  Defs.' Lodgment Ex. 25 ("Sierra 911 Call").  She informed the operator that he was a black male, around 35 years old, weighing about 200 pounds and between 5'10" and 6'0".  *Id.*  She said she had only served him water, that she did not see any weapons on him, and that she thought he was high on drugs.  *Id.*

/ / /

---

[1] Neither Party submitted a statement of undisputed facts, and the Parties have differing interpretations or views of many of the relevant facts.  They agree, however, as to some of the material facts, as summarized below.  Any disputed facts relevant to Defendants' Motion will be raised in the analysis *infra*.

Ms. Sierra also asked the manager of the Restaurant, Jacob Skoor, to help her in dealing with Plaintiff.  Defs.' Sierra Depo. 21:20–22.  Mr. Skoor called 911 around the same time that Ms. Sierra did, also asking to have a patron removed who was refusing to leave and who appeared "to be out of his mind" and "on some sort of hallucinogen."  Defs.' Lodgment Ex. 26 ("1st Skoor 911 Call").  Mr. Skoor told the dispatcher he did not see any weapons on Plaintiff and did not think he had been drinking.  *Id.*  Mr. Skoor called 911 again about twenty minutes later to report that Plaintiff was still at the Restaurant sleeping at the bar.  Defs.' Lodgment Ex. 27 ("2d Skoor 911 Call").  Mr. Skoor was informed that two deputies were en route.  *Id.*

Deputies Chu and Soliman entered the Restaurant at around 6:55 p.m.  Defs.' Lodgment Ex. 23 ("2d Restaurant Video").  They spoke with Plaintiff for about ten minutes, trying to get Plaintiff to leave.  Defs.' Lodgment Ex. 18 ("Soliman BWC").  Chu asked Plaintiff three times if he needed medical attention, but Plaintiff repeatedly responded with questions such as, "Do I what?" and "I'm asking why?"  *Id.*  At around 7:05 p.m., Deputies Ferguson and McManus arrived at the Restaurant.  Defs.' Lodgment Ex. 16 ("1st Chu BWC").  About a minute later, Deputy Cadigan entered the Restaurant.  *Id.*

Thereafter, the five deputies arrested Plaintiff.  It is at this point that the parties have some divergent interpretations of what happened.  However, they agree that McManus approached and told Plaintiff that he was trespassing, that he had to leave, and to put his hands behind his back.  Defs.' Lodgment Ex. 13 ("1st Ferguson BWC"); Defs.' Lodgment Ex. 19 ("1st McManus BWC"); Defs.' Lodgment Ex. 7 ("Defs.' McManus Depo.") 13:1–16.  McManus and Ferguson each grabbed Plaintiff's arms.  Pl.'s Lodgment Ex. 1 ("Synced BWC"); 1st McManus BWC; Defs.' McManus Depo. 14:19–22; Defs.' Lodgment Ex. 5 ("Ferguson Depo.") 31:5–10.  Plaintiff's arms were pressed tightly together with his palms facing each other, close to his chest and under his chin.  Errata Ex. 1 ("Defs.' Carr Depo.") 94:5–13; Pl.'s Carr Depo. 91:13–22.  Cadigan also grabbed Plaintiff's left arm.  Errata Ex. 9 ("Defs.' Cadigan Depo.") 21:3–4.  Chu tased Plaintiff in drive-stun mode three times

over a period of ten seconds, each deployment lasting one second.  Synced BWC; Pl.'s Lodgment Ex. 2 ("Taser Log"); Defs.' Lodgment Ex. 6 ("Defs.' Chu Depo.") 116:2–117:18.  Defendants claim that the first three Taser deployments happened while Plaintiff was standing, *see* Defs.' Chu Depo. 117:10–11, while Plaintiff claims he was pinned to the ground by the second deployment, *see* Synced BWC, Opp'n at 7 (citations omitted).

Either way, Plaintiff was taken to the ground by Ferguson, who grabbed the back of Plaintiff's neck at the base of his head and pushed down.  Synced BWC; Soliman BWC; Defs.' Ferguson Depo. 54:1–16.  Ferguson used a mandibular pressure point hold for approximately two seconds.  Pl.s' Lodgment Ex. 8 ("Pl.'s Ferguson Depo.") 65:03–13, 66:10–16; Defs.' Ferguson Depo. 67:2–10.  McManus had his hands on Plaintiff's right arm.  Defs.' McManus Depo. 28:10–25; Pl.'s Lodgment Ex. 10 ("Pl.'s McManus Depo.") 33:5–19.  Soliman delivered a knee strike to the left side of Plaintiff's face and applied downward pressure to Plaintiff's head for a minute or two to keep him on the ground.  Pl.'s Lodgment Ex. 13 ("Pl.'s Soliman Depo.") 31:21–32:11, 34:04–07, 34:16–35:22.  Cadigan had hold of Plaintiff's left arm.  Pl.'s Lodgment Ex. 5 ("Pl.'s Cadigan Depo.") 31:1–11; Defs.' Cadigan Depo. 21:2–9, 32:5–20.  While Plaintiff was on the ground and just one second after the third Taser deployment, Chu deployed the Taser in drive-stun mode a final time for five seconds.  Taser Log; Synced BWC; Defs.' Chu Depo. 122:2–16.

Ultimately, Cadigan handcuffed Plaintiff, and Deputies McManus, Ferguson, and Cadigan carried him out of the Restaurant by his arms and legs.  Defs.' Cadigan Depo. 36:01–10; Defs.' Lodgment Ex. 15 ("Cadigan BWC").  It was at this point that Plaintiff first informed Defendants he was diabetic.  Synced BWC; Defs.' McManus Depo. 42:2–7; Defs.' Ferguson Depo. 102:1–3; Errata Ex. 4 ("Defs.' Soliman Depo.") 37:5–9.  Plaintiff was kept restrained in handcuffs outside the Restaurant.  Defs.' Soliman Depo. 47:4–5; Defs.' Ferguson Depo. 104:25–105:3; Synced BWC.  In fact, Cadigan tightened Plaintiff's handcuffs, causing Plaintiff to cry out "ouch" multiple times and complain to the paramedics that the handcuffs hurt.  Synced BWC; Pl.'s Cadigan Depo. 36:11–24.

/ / /

Once the paramedics arrived, they tested Plaintiff's blood sugar and obtained a reading of 29 mg/dL, which one of the paramedics said was "the lowest I've ever seen [in] someone that's still breathing." Cadigan BWC; Errata Ex. 10 ("Defs.' Prola Depo.") 19:4–7. The paramedics gave Plaintiff oral glucose gel to raise his blood sugar. Cadigan BWC. Plaintiff informed the paramedics that his handcuffs were too tight. 1st Ferguson BWC; Defs.' Prola Depo. 72:13–21. The paramedics performed two pulse motor sensory ("PMS") tests on Plaintiff—one at that time, and one once Plaintiff was en route to the hospital. Defs.' Prola Depo. 72:13–74:11, Defs.' Lodgment Ex. 21 ("3d McManus BWC"); Declaration of EMT Delane Anthony Moore ("Moore Decl.," ECF No. 58-5) ¶ 3.

Plaintiff was strapped to a stretcher on his side to accommodate the handcuffs and placed in an ambulance to go to the hospital. 3d McManus BWC; Carr Decl. ¶ 22. McManus accompanied Plaintiff during the ambulance ride. 3d McManus BWC. The ambulance arrived at the hospital at around 7:45 p.m. *Id.* Ferguson met the ambulance at the hospital. *Id.* Plaintiff was kept in handcuffs until he was cited and released at the hospital, about 20 to 30 minutes later. *Id.*; Defs.' McManus Depo. 86:2–7.

Plaintiff was given a Notice to Appear requiring him to appear in court on September 5, 2018, for two misdemeanor criminal charges: (1) trespassing in violation of Cal. Penal Code § 602 and (2) resisting a peace officer in violation of Cal. Penal Code § 148. Carr Decl. ¶ 25. No criminal charges were ultimately filed. *Id.* ¶ 29.

The parties agree that Plaintiff suffered abrasions to his back from being tased, pain in his wrist and shoulders from the handcuffs, and back and neck pain. Pl.'s Carr Depo. 153:20–154:23.

## II. Procedural Background

Plaintiff initiated this action on June 17, 2019, asserting claims against the County, the San Diego Sheriff's Department, Jeffrey Chu, Joe McManus, and unnamed Doe Defendants. *See* ECF No. 1. On July 10, 2019, the County moved to dismiss the complaint. *See* ECF No. 3. On September 17, 2019, Chu also moved to dismiss, *see* ECF No. 8, and on October 15, 2019, McManus also moved to dismiss, *see* ECF No. 13. On March 4,

2020, the Court denied the motions to dismiss, *see* ECF No. 19, and the County, Chu, and McManus answered on March 18, 2020, *see* ECF No. 20.

On June 30, 2020, Plaintiff filed an *ex parte* motion for leave to amend the complaint—seeking, among other changes, to drop the San Diego Sheriff's Department as a defendant and add Defendants Christopher Cadigan, Jason Ferguson, and Alexander Soliman, *see* ECF No. 30—which motion was unopposed, *see* ECF No. 31.  Accordingly, the Court granted Plaintiff leave to file the operative First Amended Complaint ("FAC"), *see* ECF No. 32, which Plaintiff did on July 2, 2020, *see* ECF No. 33.  The County, McManus, and Chu answered the FAC on July 16, 2020, *see* ECF No. 35, and Cadigan, Ferguson, and Soliman answered on August 21, 2020, *see* ECF No. 36.

Defendants filed the present Motion for Summary Judgment on January 19, 2021. *See* ECF No. 58.

## PLAINTIFF'S MOTION TO STRIKE

### I.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), the disclosure of an expert witness "retained or specially employed to provide expert testimony in the case or . . . whose duties as the party's employee regularly involve giving expert testimony" must be accompanied by a written report.  The disclosure of an expert witness who is not required to provide a written report, however, need only include "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  "If a party fails to provide information or identify a witness as required in Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  A court may impose additional or alternative sanctions for a failure to disclose.  *Id.*

### II.    Analysis

In his Opposition, Plaintiff seeks to strike the Declaration of Lieutenant Criss Cross ("Cross Decl.," ECF No. 58-4), arguing that Defendants never provided an expert report

from Lt. Cross pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).  Opp'n at 24–25.  Plaintiff argues that "Lt. Cross was not present or involved in the incident, and his C.V. touts his status as a regular expert for the County" on use of force.  *Id.* at 25 (citation omitted).  Defendants counter that "[Lt. Cross's] regular duties do not require giving expert testimony" and that they "identified Lt. Cross as an expert that required no written report in their expert disclosures, and provided a summary of his expected testimony relating to how he trains deputies in similar situations," thus complying with Federal Rule of Civil Procedure 26(a)(2)(C).  Reply at 10.  Defendants claim that Plaintiff failed to take advantage of opportunities to depose Lt. Cross, provide a rebuttal report, or alert Defendants' counsel as to their concerns about Lt. Cross's designation, and accordingly "any alleged oversight is justified or harmless."  *Id.* (citation omitted).

Although the Ninth Circuit has not addressed the issue of what distinguishes a Rule 26(a)(2)(B) expert witness from a Rule 26(a)(2)(C) expert witness, several other Circuit Courts of Appeal have, and district courts within the Ninth Circuit have generally adopted the distinction drawn by those courts: namely, if the witness is testifying premised on his or her personal knowledge based on his or her own involvement in the dispute, he or she is a non-retained expert subject to the disclosure requirements of Rule 26(a)(2)(C), but a witness with no prior personal knowledge of the facts giving rise to the litigation is a retained expert subject to the disclosure requirements of Rule 26(a)(2)(B).  *See, e.g.*, *Jackson v. Officer Forman*, Case No. CV 19-2443-DMG (AGRX), 2020 WL 6526373, at *2–3 (C.D. Cal. Oct. 15, 2020) (barring proposed police expert who would "comment upon the actions of the LAPD officers . . . which he did not personally observe" because expert did not produce expert report) (relying on *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1 (1st Cir. 2011)).  Here, the Cross Declaration is clear that Lt. Cross is basing his opinions on body worn camera recordings, various reports filed in the case, and deposition transcripts rather than his personal involvement in the relevant events.  *See* Cross Decl. ¶¶ 4–5.  Accordingly, Defendants' disclosure of Lt. Cross should have been governed by Rule 26(a)(2)(B) rather than Rule 26(a)(2)(C).

Because Defendants failed to comply with the disclosure requirements, the burden shifts to them to establish that their failure to comply with Rule 26(a)(2)(B) was substantially justified or harmless. *Trulove v. D'Amico*, Case No. 16-cv-050 YGR, 2018 WL 1090248, at *3 (N.D. Cal. Feb. 27, 2018). To assist in the discretionary assessment of whether exclusion is a proper sanction under Rule 37, the Ninth Circuit has articulated a five-factor test for district courts to employ: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the [plaintiff]; 4) the public policy favoring disposition of cases on their merits; [and] 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (citation omitted).

Here, the first factor favors exclusion, as the case has been pending for nearly two years and is already at the summary judgment stage; reopening expert discovery to permit Defendants to remedy the shortcomings in their disclosures undeniably would delay resolution of the present Motion for Summary Judgment as well as the litigation more generally. The second factor, the need to manage the Court's docket, seems mostly neutral, as no trial date has been set to date, although, as already noted, reopening discovery would further prolong proceedings on the instant Motion for Summary Judgment and in this case. As to the third factor, Plaintiff risks prejudice if the Court permits the declaration, as, contrary to Defendants' arguments, at least one California district court has found that "[t]he opportunity to depose these witnesses without a clear explanation in advance for the opinions they would offer, and the basis for those opinions, completely undercut the purposes of expert discovery." *See Trulove*, 2018 WL 1090248, at *3 (excluding the testimony of experts improperly designated as unretained experts). The fourth factor is neutral, as the exclusion of Lt. Cross's declaration would not dispose of Defendants' defenses. Finally, the fifth factor favors exclusion, as the alternative would be to reopen expert discovery prior to ruling on the present Motion for Summary Judgment. Given that all the relevant factors either favor exclusion or are neutral, the Court finds that Defendants'

/ / /

failure to properly disclose Lt. Cross was neither substantially justified nor harmless and **GRANTS** Plaintiff's Motion to Strike.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

**I.**   **Legal Standards**

    ***A.***   ***Summary Judgment***

       Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

       The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

       Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986).  Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248.  The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## B. Qualified Immunity

"In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  Courts may "exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.  If either prong is dispositive, the court need not analyze the other prong. *See id.* at 236–37.

A right is clearly established if the law was "sufficiently clear that every reasonable official would understand that what he is doing" is unlawful.  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.  "Except in the rare case of an 'obvious' instance of constitutional misconduct," a plaintiff must identify a controlling case existing at the time of the incident where an officer acting under similar circumstances as defendants was held to have violated the constitutional right at issue. *See Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).  The Ninth Circuit has held that "the 'obviousness principle, an exception to the specific-case requirement, is especially problematic in the Fourth-Amendment context,'" and "thus has 'real limits when it comes
/ / /

to the Fourth Amendment.'"  *O'Doan v. Sanford*, 991 F.3d 1027, 1044 (9th Cir. 2021) (quoting *Sharp v. Cty. of Orange*, 871 F.3d 901, 912 (9th Cir. 2017)).

## II.   Analysis

Plaintiff asserts five claims, the first two against the Individual Defendants only and the latter three against all Defendants: (1) unlawful detention and arrest in violation of the Fourth Amendment; (2) excessive force in violation of the Fourth Amendment; (3) false arrest/imprisonment in violation of California law; (4) negligence; and (5) violation of the Bane Act, Cal. Civ. Code § 52.1.  *See generally* FAC.  Defendants move for summary judgment as to all claims, arguing that the undisputed facts fail to establish Defendants' liability and that Defendants are entitled to qualified immunity.  *See generally* MSJ.  The Court addresses each claim in turn.

### A.   Claim 1: Unlawful Detention and Arrest (Individual Defendants)

The Individual Defendants argue that McManus had probable cause to arrest Plaintiff for trespassing and resisting arrest in violation of the California Penal Code, and therefore McManus cannot be held liable for false arrest in violation of the Fourth Amendment.  *See* ECF No. 58-1 ("Mot. Mem.") at 13–15.  The Individual Defendants further argue that they are all entitled to qualified immunity.  First, they contend that, because "it is clear that whether probable cause existed was a close question," and "McManus reasonably believed that Plaintiff had committed the crime of trespassing," McManus is entitled to qualified immunity.  *Id.* at 16 (citation omitted).  Second, they argue that the remaining Individual Defendants are entitled to qualified immunity because there is no clear precedent in the Ninth Circuit establishing when there is a reasonable opportunity to intercede.  *Id.* (citation omitted).

Plaintiff counters that factual disputes preclude summary judgment in the Individual Defendants' favor on the issue of whether his constitutional rights were violated.  Opp'n at 21.  First, Plaintiff argues that any probable cause that existed to arrest him dissipated when the officers became aware that he was suffering from a diabetic emergency, as both the offenses of trespassing and resisting a peace officer require "willfulness," a mental state

of which Plaintiff was incapable at the time of the events in question. *Id.* at 21–22. Further, Plaintiff argues that the Individual Defendants are not entitled to qualified immunity, as it was clearly established by July 2018 "that deputies violated the Fourth Amendment by prolonging Carr's arrest and detention after probable cause had dissipated." *Id.* at 22 (citing *Sialoi*, 823 F.3d at 1232).

In reply, the Individual Defendants argue that, "[o]nce probable cause to arrest someone is established, a deputy is not required to investigate a defense such as a lack of requisite intent," and thus the Individual Defendants' later knowledge that Plaintiff was suffering a diabetic emergency "does not negate McManus's earlier probable cause determination." Reply at 2 (citations omitted). The Individual Defendants further claim that Plaintiff fails to meet his burden of identifying a case with similar facts where an officer was held to violate the right at issue, as "Plaintiff cites no case dealing with California Penal Code sections 148 or 602.1." *Id.* at 3. The Individual Defendants argue that *Sialoi* is distinguishable and that the instant facts are more closely aligned with those of *Garcia v. City of Santa Clara*, 772 F. App'x 470 (9th Cir. 2019). *Id.* at 3–5.

### 1. Constitutional Violation: Unlawful Detention and Arrest

"In order to satisfy the requirements of the Fourth Amendment, an arrest must be supported by probable cause to believe that the arrestee has committed a crime." *Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1995), *as amended* (Jan. 17, 1996) (citing *Henry v. United States*, 361 U.S. 98, 102 (1959)). "In determining whether there was probable cause to arrest, we look to 'the totality of circumstances known to the arresting officers, [to determine if] a prudent person would have concluded there was a fair probability that [the defendant] had committed a crime.'" *Crowe v. Cty. of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010) (citing *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). "The analysis involves both facts and law. The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). "'[I]n a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that

probable cause is a question for the jury, and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest.'" *Orr v. Cal. Highway Patrol*, No. CIV. 2:14-585 WBS, 2015 WL 848553, at \*5 (E.D. Cal. Feb. 26, 2015) (quoting *McKenzie*, 738 F.2d at 1008).

"It is well-established that a 'person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.'" *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (quoting *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) (per curiam)). "'As a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'" *Id.* (quoting *Ortiz-Hernandez*, 427 F.3d at 574).

As an initial matter, Plaintiff pleads in his FAC, *see* FAC ¶ 50, and argues in his Opposition, *see* Opp'n at 20 (citation omitted), that each of the Individual Defendants was "an integral participant" in the conduct in question; accordingly, by focusing solely on their alleged failure to intervene, the Individual Defendants miss the mark. The Ninth Circuit has explained that "[t]his theory of liability 'does not require that each officer's actions themselves rise to the level of a constitutional violation.' Instead, liability may attach if the officer has 'some fundamental involvement in the conduct that allegedly caused the violation.'" *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (citations omitted). In other words, "an officer could be held liable where he is just one participant in a sequence of events that gives rise to a constitutional violation." *Id.* at 692.

Here, viewing the evidence in the light most favorable to Plaintiff, each of the Individual Defendants meaningfully participated in the sequence of events that culminated in Plaintiff's handcuffing, arrest, and detention, and a reasonable jury could conclude that each played an integral role in Plaintiff's arrest and detention. *See, e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (finding that officers meaningfully participated in arrest and therefore were integral participants in the allegedly excessive force where they tackled the plaintiff, helped others to gain control over the plaintiff,

ordered the use of hobble restraints, applied hobble restraints, and/or handcuffed the plaintiff); *McFarlin v. Penzone*, 848 F. App'x 695, 698 (9th Cir. 2021) ("We do not preclude liability when the defendant is alleged to have been an active participant, regardless of whether his individual actions rise to the level of a constitutional violation."). As addressed in more detail *infra*, each Individual Defendant applied force to Plaintiff and helped gain physical control over his person in the lead up to his arrest, and Cadigan tightened Plaintiff's handcuffs after Plaintiff complained of pain and did not loosen them when Plaintiff later complained.  Accordingly, the Court finds that the issue of probable cause is relevant to all the Individual Defendants, not just McManus.[2]

a.      Trespassing (Cal. Penal Code § 602.1)

"[A] violation of § 602.1 has two elements: (1) intentional interference, and (2) refusal to leave." *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001).  Further, "scienter is a necessary element of the offense of trespass." *People v. Irizarry*, 37 Cal. App. 4th 967, 975 (1995).

At the time Plaintiff was initially arrested, it appears likely the Individual Defendants had probable cause to arrest him for trespass.  Based on the facts apparent to the Individual Defendants at the time, Plaintiff was intentionally interfering with the Restaurant's business.  Plaintiff was asked multiple times by Restaurant staff and the Individual Defendants themselves over a period of about forty minutes to leave the premises, yet Plaintiff refused to do so. *People v. Turner*, 13 Cal. App. 5th 397, 406, *as modified* (July 27, 2017) (citation omitted).  Indeed, "the restaurant's manager had to interrupt [his] duties not only to ask Plaintiff to leave, but also to call the police, talk to [the officers], and fill

---

[2] The Court notes that, during the hearing, Defendants contended that "integral participant" liability is only applicable in search warrant cases.  However, that does not appear to be the case. *See, e.g.*, *Atencio v. Arpaio*, 674 F. App'x 623 (9th Cir. 2016) (analyzing integral participation issue in case involving arrestee); *Martinez v. City of Pittsburg*, 809 F. App'x 439 (9th Cir. 2020) (same); *Johnson v. Bay Area Rapid Transit Dist.*, No. C-09-0901 EMC, 2013 WL 6155266 (N.D. Cal. Nov. 22, 2013) (analyzing integral participation in context of detention by Bay Area Rapid Transit police); *Bresaz v. County of Santa Clara*, No. 14-CV-03868-LHK, 2015 WL 1230316 (N.D. Cal. Mar. 17, 2015) (analyzing integral participation in context of detainee's death).

out paperwork." *Id.*  These facts are sufficient to infer both Plaintiff's intent to interfere and to establish his refusal to leave.

However, Plaintiff contends that this probable cause dissipated when the Individual Defendants learned from paramedics that he was experiencing a diabetic emergency. Plaintiff appears to argue that the Individual Defendants should have perceived that he was unable to act with the requisite scienter to trespass given his medical condition and that this dissipated any prior probable cause.  Viewing the facts and evidence in the light most favorable to the Plaintiff, the Court cannot conclude that no reasonable jury could find that probable cause had dissipated.

The excerpts submitted by Plaintiff from the California Commission on Peace Officer Standards and Training's *Basic Course Workbook Series* (Version 6.1) (the "Manual") concerning "Diabetic Emergencies" indicates that "[t]here are a number of indicators of a diabetic emergency that are similar to indications of alcohol intoxication or substance abuse," including "[a]ggressiveness"; "[c]ombativeness"; "[u]ncooperative behavior"; "[c]onfusion, dazed appearance"; and "[d]ecreased level of consciousness." Pl.'s Lodgment Ex. 3 at 5.  Thus, the Manual indicates that "[p]eace officers should *not assume* that a person exhibiting these indicators is intoxicated without further questioning and assessment," including "[l]ook[ing] for medical alert jewelry or other indicators that the person may be diabetic." *Id.*

Furthermore, by the time Plaintiff was outside the Restaurant, the video footage establishes that Plaintiff's insulin pump was clearly visible to the Individual Defendants, *see* Synced BWC, and Plaintiff verbalized that he was diabetic, *id*.  When the paramedics arrived, Deputy Ferguson informed them that Plaintiff "says he's diabetic" and that "it looks like he's got one of those things," indicating his insulin pump.  *Id*.  The paramedics informed the Individual Defendants that Plaintiff's blood sugar level was 29 mg/dL, and one said, it was "the lowest I've ever seen someone that's still breathing."  Cadigan BWC.

A reasonable jury could conclude, based on this evidence, that a reasonable officer would have determined that Plaintiff lacked the requisite intent to interfere to commit a

trespass and that any probable cause to detain or arrest him had dissipated.  *See, e.g.*, *Orr v. Cal. Highway Patrol*, No. CIV. 2:14-585 WBS, 2015 WL 848553, at *7 (E.D. Cal. Feb. 26, 2015) ("Here, however, a reasonable jury could conclude that plaintiff's medical condition was not a 'theoretical' claim of innocence.  There were facts known to [the arresting officer] at the time of plaintiff's arrest that made plaintiff's stroke readily verifiable . . . .  Under *Ortiz,* a reasonable jury could find that [the officer] was not entitled to disregard these facts which dissipated probable cause that plaintiff was under the influence of drugs.") (citation omitted).

### b.   Resisting Arrest (Cal. Penal Code § 148(a)(1))

Defendants also claim they had probable cause to arrest and detain Plaintiff for resisting arrest in violation of California law.  "The elements of the asserted crime at issue here, a Section 148(a)(1) violation, are: '(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.'"  *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (quoting *Garcia v. Superior Court*, 177 Cal. App. 4th 803, 818 (2009)).  "Notably, '[f]or a § 148(a)(1) conviction to be valid, a criminal defendant must have "resist[ed], delay[ed], or obstruct[ed]" a police officer in the *lawful* exercise of his duties.'"  *Id.* (quoting *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (alterations and emphasis in original)).  "[F]or the purposes of Section 148(a), 'an officer is not lawfully performing her duties when she detains an individual without reasonable suspicion or arrests an individual without probable cause.'"  *Id.* at 1019 (quoting *Garcia,* 177 Cal. App. 4th at 819).

"Furthermore, '[i]t is well established under California law that even "an outright refusal to cooperate with police officers cannot create adequate grounds for [police] intrusion" without more.'"  *Rios v. City of San Diego*, No. 13-CV-3004 JLS (DHB), 2015 WL 12513462, at *8 (S.D. Cal. Oct. 13, 2015) (quoting *Mackinney v. Nielsen*, 69 F.3d 1002, 1006 (9th Cir. 1995)).  In addition, "it surely cannot be supposed that Penal Code

section 148 criminalizes a person's failure to respond with alacrity to police orders. Moreover, . . . '[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.'" *People v. Quiroga*, 16 Cal. App. 4th 961, 966 (1993) (quoting *Houston v. Hill*, 482 U.S. 451, 462–63 (1987)).

On the record presently before this Court and viewing the evidence and all inferences therefrom in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact remain as to whether Plaintiff willfully resisted the Individual Defendants, therefore precluding a grant of summary judgment in the Individual Defendants' favor as to whether they unlawfully detained or arrested Plaintiff for his alleged resistance.  Indeed, there are questions as to whether Plaintiff resisted the Individual Defendants at all.  Plaintiff testified that he made no aggressive or threatening movements toward the Individual Defendants or anyone else.  Carr Decl. ¶ 15.  He also stated in his deposition that he held his hands as he did because he felt like he was falling forward and he was protecting his chest and face from hitting the ground.  Pl.'s Carr Depo. 91:13–22.

Defendants claim that the video footage shows Plaintiff tensing when he is first grabbed by the Individual Defendants.  Synced BWC.  However, "the type of resistance [Plaintiff] is accused of—tensing his arms, as opposed to punching, kicking or biting—is difficult to discern on videos." *Lee v. City of San Diego*, 492 F. Supp. 3d 1088, 1105 (S.D. Cal. 2020).  Further, a jury could conclude that Plaintiff's alleged tensing was not resistance at all, or was, at most, passive resistance.  *See Castillo v. City of Tempe*, No. CV-12-02225-PHX-ROS, 2014 WL 11505911, at *5 (D. Ariz. Sept. 18, 2014) (concluding that, "[d]rawing all inferences in favor of Plaintiff, a jury could plainly conclude Plaintiff was not resisting arrest" where officer claimed Plaintiff tensed his arm and attempted to pull out of officer's grasp but Plaintiff denied resisting arrest); *Quyen Kim Dang v. City of Garden Grove*, No. SACV 10-00338 DOC, 2011 WL 3419609, at *7 (C.D. Cal. Aug. 2, 2011) ("[C]ourts in the Ninth Circuit distinguish between 'passive' and 'active' resistance, finding, as a general proposition, that the former justifies less force than the latter.

'Passive' resistance has been described to include actions like 'remaining seated, refusing to move, and refusing to bear weight' despite police orders to the contrary.  The action of tensing one's wrists seems to fall within this general category of resistance.") (quoting *Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994)); *Westerfield v. Wade*, No. CV05-6645 ABC (CWX), 2008 WL 1931240, at *2 (C.D. Cal. Apr. 9, 2008) ("Defendant has presented no law to support his assertion that tensing one's body constitutes active resistance.").

After he is first tased, Plaintiff says, "Okay!  Okay!," which a jury reasonably could construe as a verbalization of his willingness to comply with the Individual Defendants' requests.  Synced BWC; *see Velazquez v. City of Long Beach*, 793 F.3d 1010, 1021 (9th Cir. 2015) ("A reasonable jury could have inferred from this evidence that Abuhadwan had no plausible reason to believe that Velazquez was a physical threat to him, and that Abuhadwan never gave Velazquez an opportunity peacefully to comply once on the ground."); *Burdett v. Reynoso*, No. C-06-00720 JCS, 2007 WL 2429426, at *22 (N.D. Cal. Aug. 23, 2007) (finding disputed issues of fact precluded a determination that officers had probable cause under section 148(a) on motion for summary judgment), *aff'd*, 399 F. App'x 276 (9th Cir. 2010); *Myles v. Cty. of San Diego by & through San Diego Cty. Sheriff's Dep't*, No. 15-CV-1985-BEN (BLM), 2017 WL 4169722, at *8 (S.D. Cal. Sept. 20, 2017) ("A reasonable jury could credit Plaintiff's and Dorsett's testimonies and find that Plaintiff's actions did not rise to the level of willful resistance, delay, or obstruction."); *Quintero v. City of Escondido*, No. 15-CV-2638-BTM-BLM, 2017 WL 4005345, at *9 (S.D. Cal. Sept. 11, 2017) ("The Court therefore finds that Plaintiff, like the defendants in *Wetzel* and *Prescott*, at most, passively resisted Officer Visconti and as such, his arrest for asserting his Fourth Amendment right is unlawful.").

Moreover, as argued by Plaintiff, a jury potentially could conclude, on the evidence presented by Plaintiff, that, to the extent Plaintiff did resist, probable cause to detain or arrest Plaintiff dissipated when the Individual Defendants learned that Plaintiff was suffering a significant hypoglycemic medical event.  *See* Opp'n at 21–22.  For the reasons

provided *supra*, a reasonable jury could conclude, based on this evidence, that a reasonable officer would have determined that Plaintiff lacked the requisite intent to violate section 148 and that any probable cause to detain or arrest him for resisting an officer had dissipated.

Accordingly, on the record presently before the Court, a reasonable jury could conclude that the Individual Defendants violated Plaintiff's constitutional right to be free from unlawful detention and arrest when they detained and arrested him, both for trespassing and for resisting a police officer.

### 2. *Clearly Established Law*

Nonetheless, the Court finds the second prong of the *Graham* analysis precludes finding the Individual Defendants liable on the present facts, as the law was not sufficiently clear in July 2018 that probable cause to arrest Plaintiff may have dissipated in light of his medical condition.

"[T]he question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1078 (9th Cir. 2011) (citation and footnote omitted). Thus, "*an officer is entitled to qualified immunity whenever, on facts not subject to genuine dispute, it is clear that whether probable cause existed was a close question.*" *Flynn v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1169 (N.D. Cal. 2019) (emphasis in original) (citation and internal quotation marks omitted).

While it was clearly established at the relevant time, as Plaintiff argues, "that prolonging an arrest after confronting facts dissipating probable cause is a violation of the Fourth Amendment," Opp'n at 22, the Ninth Circuit recently rejected a similarly broad statement of the applicable "clearly established law" in a case in which the plaintiff advanced similar arguments based on his medical condition. *See O'Doan v. Sanford*, 991 F.3d 1027, 1041–42 (9th Cir. 2021). In so doing, the Ninth Circuit noted that "[t]he Supreme Court 'ha[s] repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the

official acted reasonably in the particular circumstances that he or she faced.'" *Id.* at 1041 (citation omitted).

Indeed, this case seems factually somewhat similar to *O'Doan*. In *O'Doan*, the plaintiff, O'Doan, allegedly experienced an epileptic seizure in the shower, and his girlfriend called 911 to report the incident, indicating that O'Doan was trying to break windows and had fled their home unclothed. *Id.* at 1032. Firefighters arrived to see O'Doan and his girlfriend grappling with one another in the street and requested police assistance. *Id.* O'Doan ignored the firefighters' requests that he stop, and his girlfriend told them she believed he had had a seizure. *Id.* When police officers arrived on the scene, they ordered O'Doan to stop, but O'Doan did not comply and instead turned toward the officers and balled up his fists and raised his arms slightly. *Id.* at 1033. One of the officers tried to deploy his taser but it malfunctioned, and the other officer used a "reverse reap throw" to bring O'Doan to the ground. *Id.* A "major struggle" ensued. *Id.* O'Doan was treated in the hospital for a seizure or possible seizure, was arrested for resisting a public officer and indecent exposure, was booked into the county jail overnight, and then was released on bail. *Id.* at 1033–35. Charges were brought against O'Doan but ultimately dismissed. *Id.* at 1035. O'Doan sued for, among other things, wrongful arrest and excessive force, and the district court granted summary judgment in favor of the defendants. *Id.*

On appeal, O'Doan argued that "the officers lacked probable cause to arrest him because they should have known he lacked the mens rea to complete the offenses." *Id.* at 1038. In upholding the district court's grant of summary judgment to the defendants, the Ninth Circuit held:

> [I]t cannot be said that [Officers] Sanford and Leavitt violated clearly established law in concluding they had probable cause to arrest O'Doan. Law enforcement officers every day confront persons engaged in illegal conduct who may appear to lack some degree of control over their own actions. These situations can present difficult judgment calls for police officers, who face competing duties to ensure public safety and compliance with the

20

law, while acting compassionately toward persons in need of help.

We are unaware of any case law—and neither O'Doan nor the dissent cite any—that should have made clear to Sanford and Leavitt that they lacked probable cause to make an arrest. Whether a defendant had the mens rea to commit an offense can sometimes be the focus of substantial investigation, if not an entire criminal trial. O'Doan identifies no precedent that required the officers in the specific circumstances they encountered to pretermit those processes entirely and decide on their own—on a busy street or in an emergency room—that O'Doan's facially unlawful conduct should be excused. If arresting officers had to accept at face value claims of potential lack of mens rea, as here, many arrests for unlawful conduct would likely be called into question, with significant public safety consequences. The most relevant decision (*Everson* [*v. Leis*, 556 F.3d 484 (6th Cir. 2009)]) affirmatively supported the officers' arrest of O'Doan. But at the very least, there was no decision—or indeed, any relevant body of law or precedent—that "clearly prohibit[ed]" O'Doan's arrest in the "particular circumstances" that the officers confronted.

*Id.* at 1040–41 (citations omitted).

While the Court is troubled by the Individual Defendants' treatment of Plaintiff, ultimately, the probable cause determination is a close call. Thus, the Court cannot conclude on the facts before it that it was clearly established that probable cause had dissipated and therefore continuing to arrest and detain Plaintiff after learning of his medical condition violated Plaintiff's Fourth Amendment rights. Accordingly, the Court finds that the Individual Defendants are entitled to qualified immunity and **GRANTS** the MSJ as to Plaintiff's first claim.

## B.   *Claim 2: Excessive Force (Individual Defendants)*

Although the Court finds that the Individual Defendants are entitled to qualified immunity on Plaintiff's false arrest claim, the Court analyzes Plaintiff's excessive force claim separately. As the Ninth Circuit has explained, "[b]ecause the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an

21

arrest does not establish an excessive force claim, and vice-versa." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921–22 (9th Cir. 2001)).

Claims of excessive force are analyzed under the Fourth Amendment prohibition against unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). To state an excessive force claim, a plaintiff must allege facts showing that the defendant's conduct was "objectively unreasonable in light of the facts and circumstances confronting them." *Id.* at 397. In determining the reasonableness of an officer's conduct, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing government interests at stake." *Id.* at 396. Courts should consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

The Individual Defendants assert that "[i]t is undisputed that Plaintiff did not comply with deputies' orders to put his hands behind his back. Further, the deputies believed that Plaintiff posed a threat to the safety of the officers, patrons of the Restaurant, and himself." Mot. Mem. at 18. They claim each officer's conduct was reasonable in light of the uncontroverted evidence, including video footage, therefore supporting a grant of summary judgment in their favor. *Id.* at 18–20. Moreover, the Individual Defendants claim entitlement to qualified immunity for Chu's taser deployment, citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938 (9th Cir. 2017). Mot. Mem. at 20–22. They also claim that the remaining Individual Defendants are entitled to qualified immunity because the law is not clearly established as to when an officer has a realistic opportunity to intercede. *Id.* at 22.

Plaintiff counters that the disputed factual issues preclude summary judgment on both liability and qualified immunity. Opp'n at 13. Specifically, Plaintiff argues that "[h]e did not make any aggressive or violent gestures, movements, or stances in any way at any

time," *id.* at 14; he did not resist in any way after the first deployment of the taser, *id.*; and yet the Individual Defendants put him in a headlock, "slammed" him to the ground, "dogpiled" onto him, kneed him in the head, applied continuing pressure to his head for one to two minutes, knuckled his jaw, tased him three more times, and placed him in overtight handcuffs for more than an hour, *id.* at 14–15.  Plaintiff claims that, were a jury to find these facts to be true, it could reasonably conclude that no force after the first taser deployment was necessary, and accordingly the Individual Defendants' use of force was unreasonable.  *Id.* at 15.  Plaintiff also argues that there is a genuine issue of material fact as to whether he posed a threat to anyone's safety.  *Id.*  Plaintiff argues that the fact that the Individual Defendants did not attempt to move three other customers seated at the bar within several feet of Plaintiff supports an interpretation that he was not a threat, and the video footage is consistent with his testimony that he did not resist, showing that he tensed up when first grabbed but verbalized his willingness to cooperate after the first taser deployment.  *Id.* at 15–16 (citation omitted).  Further, the Ninth Circuit has recognized that trespassing and obstructing a police officer are not severe crimes.  *Id.* at 16 (citations omitted).  Plaintiff asserts that there is a genuine factual dispute as to whether he resisted the Individual Defendants in any way, particularly after he was first tased.  *Id.* at 16–18.

Finally, Plaintiff argues that it was clearly established that the Individual Defendants' use of force violated the Fourth Amendment.  *Id.* at 18.  Because Plaintiff argues no force was necessary after Chu first deployed the taser, any subsequent force was unnecessary and unreasonable.  *Id.* (citations omitted).  Plaintiff argues *Isayeva* is distinguishable, as there the suspect was only tased once, while Chu tased Plaintiff three more times in a period of less than thirty seconds after he was first tased and stopped any possible resistance.  *Id.* at 19 (citations omitted).  And Plaintiff contends that all the Individual Defendants are liable as integral participants in pinning Plaintiff to the ground while Chu tased him.  *Id.* at 20.  Alternatively, Plaintiff argues that this is a sufficiently obvious violation of his constitutional rights that clearly established precedent need not be cited.  *Id.* at 20–21.

In reply, the Individual Defendants argue that the Court can and should infer from Plaintiff's "minor" injuries that the force used was minimal.  Reply at 5 (citing *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018)).  They claim that handcuffing "is 'low on the continuum of tactics available to police officers.'"  *Id.* (quoting *Donovan v. Phillips*, No. 3:14-cv-00680-CRB, 2015 WL 993324, at *5 (N.D. Cal. Mar. 4, 2015)).  The Individual Defendants argue that Plaintiff fails to cite any case showing that McManus's, *id.* at 5–6; Cadigan's, *id.* at 6–7; Ferguson's, *id.* at 8; or Soliman's, *id.*; use of force violated clearly established law.  The Individual Defendants also argue that the other officers cannot be held liable as "integral participants" in Chu's decision to deploy his taser.  *Id.* at 9–10.

### 1.  Constitutional Violation: Excessive Force

As noted *supra*, Plaintiff claims that each Individual Defendant was an integral participant in the allegedly excessive force.  *See* FAC ¶ 58; Opp'n at 20.  And, for the reasons provided *supra*, the Court finds that a reasonable jury, viewing the evidence in Plaintiff's favor, could find that each of the Individual Defendants was an integral participant in the excessive force, which was not, contrary to Individual Defendants' assertion, limited to Chu's taser deployments.  Rather, Plaintiff claims at least the following conduct constituted excessive force:

- Chu deployed his taser in drive-stun mode a total of four times over a period of less than 30 seconds;

- "Ferguson put [Plaintiff] in a headlock and slammed [him] to the ground"; then "Ferguson dogpiled on [Plaintiff]" with both Cadigan and McManus; Ferguson "pressed down on [Plaintiff] with his 205-pound body"; and Chu applied his bodyweight to "the dogpile of deputies on [Plaintiff]";

- Ferguson "pressed his left knuckle into the area behind [Plaintiff]'s ear and jawline to cause him pain";

- Soliman kneed Plaintiff in the head, and Soliman applied downward pressure on Plaintiff's head for one to two minutes; and

- Once Plaintiff was prone and speaking with the officers, Cadigan tightened

> Plaintiff's handcuffs until Plaintiff cried out in pain, and neither McManus nor Ferguson loosened or removed the handcuffs despite Plaintiff's repeated complaints of pain.

Opp'n at 14.

Some courts have found that "tackling is a low quantum of force," as is "[t]he use of handcuffs to detain an individual." *Sienze v. Kutz*, No. 1:17-CV-0736 AWI SAB, 2019 WL 95459, at \*7 (E.D. Cal. Jan. 3, 2019), *reconsideration denied*, No. 1:17-CV-0736 AWI SAB, 2019 WL 7606135 (E.D. Cal. Mar. 18, 2019) (citations omitted).  However, using a taser in drive-stun mode is a less than intermediate use of force.  *See, e.g.*, *Lerma v. City of Nogales*, No. CV 12-518-TUC-FRZ, 2014 WL 4954421, at \*8 (D. Ariz. Sept. 30, 2014) ("Since *Mattos*, district courts in the Ninth Circuit have 'assume[d] that the taser use in drive stun mode constituted a somewhat less than intermediate level of force.'") (citations omitted).  And, "[w]hile using knee placement to restrain and handcuff an arrestee may be a less significant use of force [than knee strikes] depending on the circumstances, an officer ramming his knee into an arrestee's back tends towards being excessive, even given an arrestee's resistance." *Lopez v. City of Imperial*, No. 13-CV-00597-BAS WVG, 2015 WL 4077635, at \*7 (S.D. Cal. July 2, 2015).  Finally, putting Plaintiff into a headlock, slamming him to the ground, and then having multiple officers put their bodyweight on him would appear to be at least an intermediate use of force.  *See, e.g.*, *Roberson v. City of Hawthorne*, __ F. Supp. 3d __, No. CV196913DMGJPRX, 2021 WL 852124, at \*7 (C.D. Cal. Jan. 29, 2021) ("[T]he nature of the intrusion involved placing [the plaintiff] in a headlock, throwing him against the wall and then to the ground, and then putting weight on his neck, with [another officer] adding weight to [the plaintiff's] lower backside. Defendants emphasize that the whole scuffle took only a few seconds and that [the plaintiff] did not suffer any immediate apparent injuries.  But a violent tackle, especially focused on the head and neck area, need not take long to be severe.  Nor does the fact that [the plaintiff] appeared to emerge relatively unscathed change the nature of the attack that he described.").

Combined, a jury reasonably could find the intrusion on Plaintiff's rights to be more than minimal.  *See, e.g.*, *Marquez v. City of Phoenix*, 693 F.3d 1167, 1174 (9th Cir.), *as amended on denial of reh'g* (Oct. 4, 2012) (finding nine taser deployments, two ineffectively deployed in probe mode and seven in drive-stun mode, along with being wrestled into submission by two policemen, "constituted a not-insignificant potential intrusion upon [the plaintiff]'s Fourth Amendment rights") (citation omitted); *K.J.P. v. Cty. of San Diego*, No. 3:15-CV-02692-H-MDD, 2019 WL 1586739, at *7 (S.D. Cal. Apr. 12, 2019) ("[The officer] used significant force on [the plaintiff] in the form of pinning his arm, force using his knee to [the plaintiff]'s shoulder, placing his full bodyweight on [the plaintiff], and elbowing [the plaintiff]'s head."); *Lerma*, 2014 WL 4954421, at *9 ("The evidence supports the conclusion that the four taser deployments in dart-mode made in quick succession, together with the drive-stun mode deployment and the officers' physical contact with Plaintiff who, after the first taser deployment remained on the floor, 'constituted a not-insignificant potential intrusion upon [the plaintiff's] Fourth Amendment rights.'") (citing *Marquez*, 693 F.3d at 1174); *Radwan v. Cty. of Orange*, No. SACV 08-0786 AG, 2010 WL 3293354, at *16 (C.D. Cal. Aug. 18, 2010) ("Overall, the use of force against Plaintiff at the scene of his arrest was moderate," where the plaintiff was tased once in drive-stun mode with no warning, had leg chains that were already tight and painful kicked, had his head thrown against a car hood, was thrown to the ground, and had his testicles squeezed), *aff'd*, 519 F. App'x 490 (9th Cir. 2013); *Bohnert v. Mitchell*, No. CV-08-2303-PHX-LOA, 2010 WL 3767566, at *13 (D. Ariz. Sept. 21, 2010) (finding officers collectively used a significant level of non-lethal force when they tased the plaintiff four times in stun mode, used the combined strength of three officers to restrain him, and hit the plaintiff on his shoulder or arm with a fist); *Neidinger v. Cty. of Pierce*, No. 3:10-CV-5702-RBL, 2012 WL 3023319, at *3 (W.D. Wash. July 24, 2012) (finding reasonable jury could conclude excessive force used where officer "repeatedly tased [the plaintiff in drive-stun mode], pushed her to the floor, and choked her").  In sum, the Court finds that the intrusion

/ / /

on Plaintiff's Fourth Amendment rights was not insubstantial, and likely intermediate, in nature.

Meanwhile, the crimes at issue decidedly were not severe. *See, e.g.*, *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) ("Trespassing and obstructing a police officer . . . 'provide[ ] little, if any, basis for the officer[']s[ ] use of physical force.'") (citation omitted); *Blankenhorn*, 485 F.3d at 478 ("[T]he severity of the alleged crime, misdemeanor trespass, was minimal."); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) (concluding that alleged crime of obstructing a police officer "was far from severe") (citations omitted); *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) (describing obstruction of a police officer as a "relatively minor crime").

Further, a jury viewing the evidence in Plaintiff's favor could conclude that the threat posed by Plaintiff—the most important of the *Graham* factors—was minimal. *Roberson*, 2021 WL 852124, at *8 (citing *Smith*, 394 F.3d at 702). Although the Individual Defendants contend that they "believed that Plaintiff posed a threat to the safety of the officers, patrons of the Restaurant, and himself," Mot. Mem. at 18, "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern," *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). Here, the objective factors do not suggest that Plaintiff posed much of a threat to anyone. Both the waitress and the manager at the Restaurant said they saw no weapons on Plaintiff when they called 9-1-1. Sierra 911 Call; 1st Skoor 911 Call. The body worn camera footage shows that Plaintiff was wearing fairly form-fitting shorts and a not overly baggy or long T-shirt that would have made concealing a weapon difficult. *See* Synced BWC.

Further, although Plaintiff did not comply with the Individual Defendants' requests that he leave the Restaurant, viewing the evidence in the light most favorable to Plaintiff, "[Plaintiff] never became hostile or aggressive towards the[ Individual Defendants], never took a fighting stance, never clenched his fists or made threatening gestures, and he never used profanity." *Lee v. City of San Diego*, 492 F. Supp. 3d 1088, 1102 (S.D. Cal. 2020).

Although the Individual Defendants contend that Plaintiff engaged in certain behaviors that signaled he might be "assaultive" or "violent"—*see, e.g.*, Defs.' Soliman Depo. 19:17–21:2; Defs.' Ferguson Depo. 33:20–34:6, 49:1–22; Defs.' Chu Depo. 111:15–23, 116:5–10; Defs.' McManus Depo. 14:21–15:12, 25:17–26:11—viewed in Plaintiff's favor, the evidence reasonably could be interpreted otherwise. Mr. Skoor, the Restaurant's manager, said during his deposition that he did not see Plaintiff make any aggressive or violent movements toward anyone, including the Individual Defendants. Pl.'s Lodgment Ex. 12 ("Pl.'s Skoor Depo.") 70:9–16. Soliman wanted Plaintiff to "stand up and just walk out of the restaurant with [him]," Defs.' Soliman Depo. 14:14–15, yet, when Plaintiff *did* stand up, Soliman claimed it seemed "assaultive," *id.* 19:24–20:1, and said to Plaintiff, "don't get in my face" and to "sit down," Soliman BWC. A reasonable juror could find that Plaintiff was simply attempting to comply with the Individual Defendants' request, however. Defs.' Soliman Depo. 20:7–17 (agreeing that Plaintiff had to walk toward Soliman to leave the Restaurant). And during his deposition, Plaintiff indicated that he was pulled from his chair rather than standing up of his own accord, Pl.'s Carr Depo. 90:15–16, 90:23–91:6, and that he put his arms in front of him when he was upright because he felt that he was falling and wanted to break his fall, "not so much like this, like I'm about to scrap with you," *id.* 91:13–22. Finally, the video footage shows no Restaurant patrons in Plaintiff's general vicinity. *See* Synced BWC. As a whole and viewing the evidence in Plaintiff's favor, as the Court must, a jury could conclude that a reasonable officer may have believed Plaintiff was being a nuisance to the Restaurant, but that he did not pose a threat to anyone.

Finally, as noted *supra*, there remains a genuine issue of material fact as to whether and to what degree Plaintiff resisted the Individual Defendants. Plaintiff claims he did not resist at all, but merely tensed up when he was unexpectedly grabbed and tased. Opp'n at 7. The Individual Defendants claim that Plaintiff resisted McManus's attempts to handcuff him, resulting in a physical struggle. Mot. Mem. at 18. Ultimately, the video footage is unclear on this point. "[A]lthough [Plaintiff] appears to resist the officers at certain points

during his detention/arrest, disputes exist regarding the extent of [Plaintiff]'s resistance. Under these circumstances, a reasonable jury could find [Plaintiff]'s limited resistance did not justify the amount of force used." *Lee*, 492 F. Supp. 3d at 1106; *see also Roberson*, 2021 WL 852124, at *8 ("This *de minimis* reaction [of reflexively trying to pull arm away when officer attempted to grab it with little warning] does not warrant throwing him against the wall and to the ground in a headlock and pinning him down by the neck.").

Thus, viewing these factors collectively, the Court concludes that the governmental interest in using force against Plaintiff was minimal. And, even though the intrusion on Plaintiff's rights was not extreme, it was not insignificant; accordingly, weighing the level of force used against the minimal need for force, a reasonable jury could conclude that the Individual Defendants violated Plaintiff's rights by using unreasonable and excessive force.

### 2. Clearly Established Law

Nonetheless, the Individual Defendants claim they are entitled to qualified immunity, so the Court now turns to that issue.

As an initial matter, Plaintiff argues that this is an "obvious case" of constitutional misconduct. *See* Opp'n at 20–21. In an "obvious case" of constitutional misconduct, an officer may still violate clearly established law even though no controlling precedent exists. *See Brosseau v. Haughen*, 543 U.S. 194, 198–99 (2004) (per curiam). However, the misconduct must be so obvious that every reasonable officer would have known it was unlawful. *See al-Kidd*, 563 U.S. at 741. The Supreme Court has reiterated that the "obvious case" is rare and that the general standard in *Graham* is typically insufficient. *See id.* at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.").

Although the Court finds that a reasonable jury could conclude that some or all of the force used against Plaintiff was excessive under the *Graham* factors, the Court cannot conclude that the alleged use of force was so obviously excessive that every reasonable officer would know it was unlawful per se. Accordingly, Plaintiff's evidence of force fails

to present an obvious case of constitutional misconduct.  Because the Court finds that this is not an "obvious case" of constitutional misconduct, the Court next analyzes the relevant existing precedent.

Chu tased Plaintiff in drive-stun mode four times over a period of less than thirty seconds.  *See* Taser Log.  The Parties dispute whether the last three happened when Plaintiff had already been tackled.  Nonetheless, at the time the incident occurred in July 2018, it was clearly established that "use of a taser in drive-stun mode on a person who 'actively resisted arrest,' but posed no 'immediate threat to the safety of the officers or others,' constituted excessive force."  *Bonivert v. City of Clarkston*, 883 F.3d 865, 880 (9th Cir. 2018) (citing *Mattos*, 661 F.3d at 445–46); *see also Del Valle v. Thorne*, 790 F. App'x 868, 870 (9th Cir. 2020) (noting that "it was clearly established at the time of Thorne's actions [*i.e.*, September 2016] that discharging a taser on a non-threatening individual who had not committed a serious crime and had not engaged in aggressive or violent resistance would violate the Fourth Amendment").  The Individual Defendants cite *Isayeva*, 872 F.3d 938, for the proposition that the law was not clearly established at the relevant time that the use of a taser in drive-stun mode constituted excessive force.  MSJ Mem. At 20–21.  *Isayeva*, however, is inapposite.  Although decided in 2017, *Isayeva* analyzed the state of the law as of February 18, 2013.  *See* 872 F.3d at 948–50.  *Bonivert*, decided in February 2018, makes clear that, by the time Plaintiff was tased in July 2018, the state of the law had changed.  Accordingly, the Court finds that qualified immunity is not appropriate as to the taser deployments.

Plaintiff further claims that he was placed in a headlock and slammed to the ground, then dogpiled by each Individual Defendant, all of whom applied their body weight to him. In *Blankenhorn*, 485 F.3d at 481, the Ninth Circuit held that "gang-tackling . . . a relatively calm trespass suspect—especially one who . . . was at the moment not actively resisting arrest—was a violation of that person's Fourth Amendment rights."  Accordingly, viewing the facts in the light most favorable to Plaintiff, it was clearly established in July 2018 that tackling a non-violent and non-resisting trespass suspect was unconstitutional, and the

Court thus finds that the Individual Defendants are not entitled to qualified immunity for this use of force.

Plaintiff also claims that Soliman kneed him in the head and put downward pressure on his head for one to two minutes while the other officers were dogpiling on him.  The Ninth Circuit has stated that "*Lolli* [*v. County of Orange*, 351 F.3d 410 (9th Cir. 2003),] should have put a reasonable official on notice that he was prohibited from the type and amount of force used against [the plaintiff], including multiple strikes to the face, repeated tasering, and a knee strike, when [the plaintiff] was at most passively resisting, he posed no threat to the officers, and he was already being physically restrained by several officers." *Atencio v. Arpaio*, 674 F. App'x 623, 625–26 (9th Cir. 2016).  Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court finds that qualified immunity is not available here.

Finally, although the Individual Defendants claim that the mere use of handcuffs does not rise to the level of excessive force, *see* MSJ Mem. at 20, the Individual Defendants misstate the relevant issue.  Plaintiff does not claim that the simple use of handcuffs constituted excessive force; rather, he alleges that his handcuffs were overly tight, causing him to yell out in pain, that Cadigan subsequently tightened his handcuffs until Plaintiff cried out in pain, and that neither McManus nor Ferguson loosened the handcuffs when Plaintiff begged them to do so.  Opp'n at 8–9 (citations omitted).  It was clearly established by July 2018 that overly tight handcuffing and refusal to loosen handcuffs after the arrestee complains of pain could be excessive force.  *See, e.g.*, *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993).  Accordingly, the Court finds that qualified immunity is not called for as to the allegedly overtight handcuffing, either.

In light of the foregoing, the Court **DENIES** the Individual Defendants' MSJ as to Plaintiff's second claim.  A reasonable jury could find that all the Individual Defendants used unconstitutional force against Plaintiff and that the law was clearly established such that none are entitled to qualified immunity.

/ / /

### C.   Claim 3: California False Arrest/Imprisonment (All Defendants)

Defendants argue that Plaintiff's third claim must be dismissed because McManus had probable cause to arrest Plaintiff for trespass as well as obstructing or resisting a law enforcement officer.  Mot. Mem. at 22.  Plaintiff argues that, because probable cause had dissipated, probable cause did not exist at the relevant time and Defendants are liable for false arrest.  Opp'n at 23 (citing *Salazar v. Upland Police Dep't*, 116 Cal. App. 4th 934, 947–48 (Cal. Ct. App. 2004)).

To prevail on his claim, Plaintiff must establish "(1) the nonconsensual intentional confinement of a person; (2) without lawful privilege; and (3) for an appreciable period of time, however brief."  *Lyons v. Fire Ins. Exchange*, 161 Cal. App. 4th 880, 888 (2008).  "California law provides an absolute defense where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful." *Lee*, 492 F. Supp. 3d at 1109 (quoting *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir. 2003)) (internal quotation marks omitted); *Orr*, 2015 WL 848553, at \*15 n.10 ("An officer is not liable for false arrest where he 'had reasonable cause to believe the arrest was lawful.'") (citing *Blankenhorn*, 485 F.3d at 469).

For the reasons provided *supra*, disputed issues of fact preclude the Court from concluding that the Individual Defendants had probable cause to arrest Plaintiff or that any probable cause had not dissipated when the Individual Defendants comprehended that Plaintiff was experiencing a medical emergency.  Accordingly, the Court **DENIES** Defendants' MSJ as to Plaintiff's third claim.

### D.   Claim 4: Negligence (All Defendants)

Defendants argue that the force used on Plaintiff during his arrest was reasonable. Mot. Mem. at 23.  They also claim that the Individual Defendants are entitled to immunity under California Government Code § 820.2 for any discretionary decisions.  *Id.*  Finally, they note that Plaintiff was given medical assistance outside the Restaurant and subsequently taken to the hospital.  *Id.*

/ / /

Plaintiff responds that a jury could find negligence based on the officers' unreasonable use of force, and thus issues of material fact preclude summary judgment. Opp'n at 23.  Plaintiff claims that the Ninth Circuit has rejected Defendants' argument concerning California Government Code § 820.2.  *Id.* (citing *Blankenhorn*, 485 F.3d at 487; *Robinson v. Solano Cty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc)).

Having found that a reasonable jury could find that the Individual Defendants violated Plaintiff's constitutional rights by using excessive force, the Court agrees with Plaintiff that summary judgment is inappropriate here.  The Ninth Circuit has noted that "it has long been established that [California Government Code § 820.2] does not apply to officers who use unreasonable force in making an arrest."  *Blankenhorn*, 485 F.3d at 487 (citations omitted).  In *Blankenhorn*, the Ninth Circuit found that the officer defendants were not entitled to summary judgment on state law claims, including negligence, arising from the alleged use of force during the plaintiff's arrest on the ground that they were immune from liability under section 820.2 where the officers were not entitled to qualified immunity on the plaintiff's claim for unreasonable use of force.  *See id.*

Defendants' argument that they were not negligent because Plaintiff was given medical assistance outside the Restaurant and taken to the hospital does not alter this conclusion.  Plaintiff alleges that the Individual Defendants were negligent in, among other things, failing to properly "assess the need to detain, arrest and use violent force against [Plaintiff]."  FAC ¶ 70(a).  Because Plaintiff's allegations as to negligence are at least in part grounded on Defendants' alleged use of excessive force, a claim for which the Court finds summary judgment inappropriate, the Court likewise finds that Defendants are not entitled to summary judgment on Plaintiff's negligence claim, where questions of material fact remain as to the appropriateness of Defendants' actions.  *See, e.g.*, *Lee*, 492 F. Supp. 3d at 1109 ("Defendants argue summary judgment is warranted against Lee's negligence and battery causes of action.  Their argument is based on the theory that the force used to detain/arrest Lee was reasonable.  Because the Court has found disputed issues of fact preclude a finding that they did not use excessive force, Defendants' argument regarding

the negligence and battery causes of action fail."); *see also Orr*, 2015 WL 848553, at \*15 n.11 (noting that claim for negligence stemming from allegations of excessive force is analyzed under Fourth Amendment's reasonableness standard) (citations omitted). Accordingly, the Court **DENIES** Defendants' MSJ as to Plaintiff's fourth claim.

### E.    Claim 5: Bane Act (Cal. Civ. Code § 52.1) (All Defendants)

Finally, Defendants claim that Plaintiff's Bane Act claim fails because Plaintiff does not recall any of the Individual Defendants threatening, intimidating, or coercing him in interference with his legal rights. Mot. Mem. at 23–24. Plaintiff counters that the Ninth Circuit and California state courts have rejected the argument that a Bane Act claim requires threats or intimidation beyond the underlying use of excessive force. Opp'n at 24 (citations omitted). Further, Defendants' specific intent to deprive Plaintiff of his constitutional rights can be proven by recklessness, and whether the evidence establishes the Individual Defendants' recklessness is a disputed issue of fact that precludes summary judgment. *Id.*

"Generally, establishing an excessive force claim under the Fourth Amendment also satisfies the elements of section 52.1." *Orr*, 2015 WL 848553, at \*14 (citations omitted). Indeed, relying on numerous California court precedents and its own prior decisions, the Ninth Circuit has explicitly stated that, "in excessive force cases, . . . § 52.1 does not require proof of coercion beyond that inherent in the underlying violation." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). Thus, Defendants' argument "that Plaintiff is missing the element of intentional interference of his rights **by threats, intimidation or coercion**" is, quite simply, incorrect. Reply at 10 (emphasis in original).

Because, viewing the evidence in the light most favorable to Plaintiff, disputed issues of material fact remain as to whether the Defendants used excessive force in arresting Plaintiff and whether Defendants had the requisite intent to deprive Plaintiff of his rights— the latter issue not having been addressed by Defendants in their MSJ at all—the Court **DENIES** Defendants' MSJ as to this claim. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (reversing grant of summary judgment in favor of defendant

1  police officer where, "[a]lthough there was no evidence of coercion independent from [the
2  officer]'s use of objectively unreasonable force, we cannot conclude from the record that,
3  taking the evidence in the light most favorable to [the plaintiff], no reasonable jury could
4  find that [the officer] had a specific intent to violate [the plaintiff]'s Fourth Amendment
5  rights.").

6                                    **CONCLUSION**

7         In light of the foregoing, the Court **GRANTS** Plaintiff's Motion to Strike (ECF No.
8  60) and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary
9  Judgment (ECF No. 58).  Specifically, the Court **GRANTS** summary judgment in favor of
10 the Individual Defendants as to Plaintiff's first claim but otherwise **DENIES** Defendants'
11 Motion.  The Parties **SHALL CONFER** and **SHALL FILE** a proposed schedule of
12 pretrial dates and deadlines within <u>seven (7) days</u> of the date on which this Order is
13 electronically docketed.

14         **IT IS SO ORDERED.**

15 Dated:  September 17, 2021

16                                           Hon. Janis L. Sammartino
17                                           United States District Judge

35

19-cv-1139 JLS (MDD)